166 P.3d 1251 (2007)
Randall W. LESKOVAR, Appellant,
v.
Gregory J. NICKELS, in his official capacity as Mayor of the City of Seattle, Respondent.
Gloria Gay Atchison; Dick and Carol Cassidy; Mark and Linda Goldberg; Linda Jordan; Larry and Maria King; Grey and Tracy Oetting; and Sid Porter, Appellants,
v.
City of Seattle, a Municipal corporation; and Gregory J. Nickels, in his official capacity as Mayor of the City of Seattle, Respondents.
Nos. 54354-7-I, 54450-1-I.
Court of Appeals of Washington, Division 1.
September 17, 2007.
*1252 Brian Fahling, AFA Center for Law & Policy, Tupelo, MS, Darren Clayton Walker, Law Office of Richard S. Ross, Vancouver, WA, for Appellants.
Thomas Aquinas Carr, Gary E. Keese, Phillip Eugene Brenneman, Seattle City Attorneys Office, Seattle, WA, for Respondents.
COX, J.
¶ 1 A city's executive orders are presumed to be valid, and grants of municipal power are to be liberally construed.[1] An executive order may be found to be invalid if (1) a state statute preempts city regulation of the subject matter or (2) the order directly conflicts with a state statute.[2] Those who challenge the order bear the burden of proving that the ordinance is invalid.[3] These principles are equally applicable to executive orders and ordinances.[4]
¶ 2 Here, Randall Leskovar, Gloria Atchison, and others challenging the executive order of Seattle's Mayor Gregory Nickels, in his official capacity, fail in their burden to prove the order is invalid. State statutes do not preempt the field of employee benefits governed by the laws of the City of Seattle. Moreover, the executive order at issue here does not conflict with state statutes governing marriage. Accordingly, we affirm the dismissal of these cases by the superior court.
¶ 3 The material facts are undisputed. In March 2004, Mayor Nickels issued Executive Order 02-04 entitled "City Recognition of Valid Marriage Licenses." The operative portion of the order directed that:
[A]ll City Departments recognize the same sex marriages of City employees in the *1253 same manner as they currently recognize opposite sex marriages of City employees for purposes of granting employee benefits and other benefits ordinarily received in the course of employment.[5]
¶ 4 Leskovar, Atchison, and others commenced these actions against the City of Seattle and Mayor Nickels (collectively, "City"). They sought declaratory, injunctive, and other relief on the basis that the executive order was allegedly invalid. Specifically, they contended that the order conflicted with the Defense of Marriage Act, RCW 26.04.010, RCW 26.04.020, and other governing law.
¶ 5 Following consolidation of the two cases, the City moved to dismiss under Civil Rule 12(b)(6). The trial court granted the motion and denied all requests for relief.
¶ 6 Leskovar and Atchison (collectively, "Leskovar") appeal.

FAILURE TO STATE A CLAIM
¶ 7 Leskovar argues that Mayor Nickels' executive order granting employee benefits to city employees in same-sex marriages redefines marriage and violates RCW 26.04.010 and RCW 26.04.020. We disagree. We hold that the order neither conflicts with these statutes nor otherwise invades a field preempted by a state statute.
¶ 8 A Civil Rule 12(b)(6) dismissal is appropriate "only when it appears beyond doubt that the claimant can prove no set of facts, consistent with the complaint, which would justify recovery."[6] We review a Civil Rule 12(b)(6) dismissal de novo.[7]
¶ 9 "A party seeking relief through a temporary injunction must show a clear legal or equitable right, that there is a well-grounded fear of immediate invasion of that right, and that the acts complained of have or will result in actual and substantial injury."[8] We review a denial of a preliminary injunction for an abuse of discretion.[9]
¶ 10 "A writ of prohibition is a drastic remedy that is proper only when: (1) it appears the body to whom it is directed is about to act in excess of its jurisdiction; and (2) the petitioner does not have a plain, speedy, and adequate remedy in the ordinary course of law."[10] We review a denial of a writ of prohibition for an abuse of discretion.[11]
¶ 11 We start with the observation that the state supreme court recently dealt with the same issues now before us in a substantially similar case, Heinsma v. City of Vancouver.[12] We see no reason to depart from the rationale of that case in answering the questions that are now before us.
¶ 12 In Heinsma, the City of Vancouver began offering health care benefits to domestic partners of city employees.[13] To qualify as a domestic partner for purposes of the program, employees and their partners were required to file an affidavit proclaiming that their relationship existed. Roni Heinsma, a taxpayer and resident of the City of Vancouver, commenced a declaratory judgment action requesting the court to decide that the benefits program was unconstitutional. The trial court granted the city's motion for summary judgment, concluding that the extension of benefits to domestic partners was a *1254 matter of local concern rather than statewide concern.[14]
¶ 13 Our state supreme court affirmed the trial court's order. The supreme court set forth the proper analysis stating that an order is invalid if one of two questions is established. First, the challengers of the provision may establish that a general statute preempts regulation of the subject matter.[15] Alternatively, they may show that the provision directly conflicts with a state statute.[16]

Preemption
¶ 14 There can be no serious dispute that the field of employee benefits for city employees has not been preempted by the state and remains a matter of local concern. Article XI, section 10 of the Washington Constitution allows first class cities to adopt city charters, which permit cities to exercise broad legislative powers. A first class city may make and enforce within their limits "regulations [that] are not in conflict with general laws."[17] "Thus, a first class city may, without sanction from the legislature, legislate regarding any local subject matter."[18] The regulation of employee benefits is a matter of local concern in which local governments have wide discretion.[19]
¶ 15 In Heinsma, the supreme court recognized that cities have a strong interest in retaining qualified employees, making the regulation of employee benefits a traditionally local interest.[20] The court also recognized that the state of Washington provides for home rule charters in order to allow cities to operate economically and efficiently.[21]
¶ 16 Nothing has changed by way of constitutional, legislative, or other action since Heinsma to suggest that the field of employee benefits of municipalities has been preempted by the state. To the contrary, this field remains a matter of local concern, particularly in light of the court's recognition that cities have a strong interest in retaining qualified employees.
¶ 17 Here, the executive order at issue provides in relevant part as follows:
NOW, THEREFORE, I, GREGORY J. NICKELS, Seattle Mayor, do order that all City Departments recognize the same sex marriages of City employees in the same manner as they currently recognize opposite sex marriages of City employees for purposes of granting employee benefits and other benefits ordinarily received in the course of employment.[22]
¶ 18 The plain words of the above operative provisions of the order focus on employee benefits, a matter of local concern. Leskovar fails to present any persuasive argument that the plain words of the operative provisions of the order do anything other than address employee benefits, a matter of local concern to the City of Seattle. *1255 RCW 41.04.180 gives the city authority to provide benefits to employees and their dependents.[23] Thus, the mayor was fully within his right to issue an executive order directing the provision of employee benefits to employees of the City of Seattle.
¶ 19 In short, the state has not preempted the field of employee benefits for workers employed by the City of Seattle. Benefits for city employees are a matter of local concern in which a city may exercise broad discretion. Thus, Leskovar has failed to establish a right to relief based on preemption.

Conflict
¶ 20 Leskovar advances a series of arguments that essentially focus on the second basis for relief under the controlling test. Leskovar argues that the order gives legal effect to same-sex marriages, which is expressly prohibited by the legislature. Leskovar also argues that the trial court misapplied the Heinsma decision to this case. We reject these arguments.
¶ 21 In Heinsma, the court also concluded that the City of Vancouver's recognition of domestic partnerships for purposes of employee benefits in no way affects Title 26 RCW, or the state's ability to regulate familial relationships on a statewide basis.[24] The court noted that extending benefits to domestic partners does not transform the relationship into a legal marriage.[25]
¶ 22 Here, the executive order extending benefits to city employees in same-sex marriages in the same manner as other city employees determines who is eligible for employee benefits. Nowhere does the order purport to give legal effect to same-sex marriages. Moreover, we see nothing in it that conflicts with Title 26 RCW or any of the provisions to which Leskovar refers in its arguments.[26]
¶ 23 The cases on which Leskovar relies are not helpful in resolving the questions that are before us. Andersen v. King County,[27] in which the majority of a divided court upheld the constitutionality of the defense of marriage statutes, which prohibit same-sex marriage, does not advance the argument that there is a conflict between the executive order and our state statutes. The issue there was the validity of the provision in Title 26 RCW. Nowhere in those cases was the question of employee benefits at issue. The issue here is whether Mayor Nickels has authority to extend employee benefits to employees in same-sex marriages, not whether same-sex marriage is legal. Thus, there is no direct conflict between the executive order and our state statutes, which, as Heinsma teaches, is required to invalidate a local law.[28]
¶ 24 Leskovar also cites Waggoner v. Ace *1256 Hardware Corp.[29] There, the supreme court upheld Ace Hardware's company policy, which prohibited employees in the same department or functional area from cohabiting or dating.[30] The court held that the policy does not violate RCW 49.60.180, which prohibits "marital status" employment discrimination. Again, this case is not on point because it does not address a city's broad authority to regulate employee benefits.
¶ 25 National Pride at Work v. Governor of Michigan,[31] likewise, is of no help to Leskovar. There, the Court of Appeals of Michigan held that the marriage amendment, article I, § 25 of the Michigan Constitution, precludes public employers from extending benefits to domestic partners of the same sex. The marriage amendment states:
To secure and preserve the benefits of marriage for our society and for future generations of children, the union of one man and one woman in marriage shall be the only agreement recognized as a marriage or similar union for any purpose.[32]
¶ 26 It is significant that the Michigan court specifically noted that Michigan's marriage amendment is unique from other jurisdictions because it prohibits the recognition of not only same-sex marriages, but also "similar unions."[33] The court concluded that the City of Kalamazoo and the various universities' extension of benefits to same-sex domestic partners conflicted with the policy of the marriage amendment  not to recognize same-sex unions "for any purpose."[34]
¶ 27 In contrast here, Washington's marriage statute prohibits marriage by "persons other than a male and a female."[35] It is distinct from Michigan's marriage amendment, and does not prohibit the recognition of "similar unions for any purpose." Leskovar fails to persuasively argue why that case has any relevance to the cases before us. In light of the unique language with which that court dealt, and the lack of any similarity between our state's laws and those of the state of Michigan in this respect, we see no relevance of that case to what we must decide here.
¶ 28 There is a final point we should make. We recognize that the executive order contains language to which Leskovar objects and on which much of the arguments are based. For example, the Whereas clauses state:
WHEREAS, hundreds of protections, privileges, benefits and responsibilities are denied to same sex couples because of their inability to marry; and
WHEREAS, marriage equality should be afforded to all consenting, adult couples regardless of their sexual orientation; and
WHEREAS, the City of Seattle has recognized domestic partnerships since 1989 and has subsequently granted equal employee benefits to city employees with a domestic partner;. . . . [36]
¶ 29 The City characterizes this language as aspirational views that do not affect the operative portions of the order that define who is entitled to employee benefits. We agree with that observation. We likewise conclude that the fact that the order authorizes the City's Office of Civil Rights to receive and investigate complaints regarding violations of the order makes no difference to our analysis. Who the City designates to administer the order is a discretionary decision that Leskovar fails to show is in any way unlawful.

REQUESTS FOR RELIEF
¶ 30 Leskovar's requests for injunctive and other relief are, of course, based on their *1257 prevailing on the underlying claim that the executive order is invalid. Leskovar fails to make the proper showing. Accordingly, Leskovar is not entitled to injunctive relief or a writ of prohibition under the standards we previously set forth in this opinion.

CONCLUSION
¶ 31 To summarize, we conclude that Leskovar fails to show the state has preempted the field of employee benefits for the City of Seattle. To the contrary, that field remains a matter of local concern in which the City exercises broad discretion. Moreover, there is nothing to show that the executive order before us directly conflicts with our state statutes. Accordingly, the trial court properly dismissed the actions and denied the requests for relief.
¶ 32 We affirm the order granting the motion to dismiss.
WE CONCUR: DWYER and AGID, JJ.
NOTES
[1] Heinsma v. City of Vancouver, 144 Wash.2d 556, 561, 29 P.3d 709 (2001).
[2] Id.
[3] Id.
[4] See 2A Eugene McQuillin, THE LAW OF MUNICIPAL CORPORATIONS § 10:6, at 399 (3d ed.2006).
[5] Clerk's Papers at 185-86.
[6] San Juan County v. No New Gas Tax, 160 Wash.2d 141, 164, 157 P.3d 831 (2007).
[7] Id.
[8] Rabon v. City of Seattle, 135 Wash.2d 278, 284, 957 P.2d 621 (1998).
[9] Id.
[10] In re Jurisdiction of Exam'r, 135 Wash.App. 312, 318, 144 P.3d 345 (2006).
[11] Id.
[12] 144 Wash.2d 556, 29 P.3d 709.
[13] Id. at 558-59, 29 P.3d 709.
[14] Id. at 559, 29 P.3d 709.
[15] Id. at 561, 29 P.3d 709.
[16] Id.
[17] Id. at 560, 29 P.3d 709 (quoting WASH. CONST. art. XI, § 11).
[18] Id.
[19] Id. at 566-67, 29 P.3d 709.
[20] In recognizing that employee benefits are traditionally matters of local interest, the court included within the cases it cited with approval Schaefer v. City & County of Denver, 973 P.2d 717, 719 (Colo.App.1998) (explaining that "the authority to define the scope of employee compensation, including benefits, is of particular importance to a local government because of its impact on a city's ability `to both hire and retain qualified individuals'") (quoting Colorado Springs Fire Fighters Ass'n v. City of Colorado Springs, 784 P.2d 766, 773 (Colo.1989)). It also cited Crawford v. City of Chicago, 304 Ill.App.3d 818, 827, 710 N.E.2d 91, 237 Ill.Dec. 668 (concluding that the power to extend benefits to city employees is essentially a local concern and that cities must be able to offer good employment benefits in order to be able to hire and retain qualified individuals), appeal denied, 185 Ill.2d 621, 242 Ill.Dec. 135, 720 N.E.2d 1090 (1999). Heinsma, 144 Wash.2d at 562, 29 P.3d 709.
[21] Heinsma, 144 Wash.2d at 562, 29 P.3d 709.
[22] Clerk's Papers at 185-86 (emphasis added).
[23] The statute provides in relevant part as follows:

Any county, municipality, or other political subdivision of the state acting through its principal supervising official or governing body may, whenever funds shall be available for that purpose provide for all or a part of hospitalization and medical aid for its employees and their dependents through contracts with regularly constituted insurance carriers or with health care service contractors as defined in chapter 48.44 RCW or self-insurers as provided for in chapter 48.62 RCW, for group hospitalization and medical aid policies or plans. . . .
[24] Heinsma, 144 Wash.2d at 563, 29 P.3d 709.
[25] Id. at 563-64, 29 P.3d 709 (citing Slattery v. City of New York, 266 A.D.2d 24, 25, 697 N.Y.S.2d 603 (1999), appeal dismissed, 94 N.Y.2d 897, 706 N.Y.S.2d 699, 727 N.E.2d 1253 (2000)).
[26] RCW 26.04.010(1) provides: "Marriage is a civil contract between a male and a female who have each attained the age of eighteen years, and who are otherwise capable." RCW 26.04.020(1) provides: "Marriages in the following cases are prohibited: . . . (c) When the parties are persons other than a male and a female." RCW 26.04.020(3) provides: "A marriage between two persons that is recognized as valid in another jurisdiction is valid in this state only if the marriage is not prohibited or made unlawful under subsection (1)(a), (1)(c), or (2) of this section."
[27] 158 Wash.2d 1, 138 P.3d 963 (2006).
[28] See Heinsma, 144 Wash.2d at 564, 29 P.3d 709 (An ordinance is invalid if it "directly and irreconcilably conflicts with [a state] statute").
[29] 134 Wash.2d 748, 953 P.2d 88 (1998).
[30] Id. at 750, 953 P.2d 88.
[31] 274 Mich.App. 147, 150, 732 N.W.2d 139 (2007).
[32] Id. (quoting MICH. CONST. 1963, art. 1, § 25) (emphasis added).
[33] Id. at 151, 732 N.W.2d 139.
[34] Id. at 163, 165, 732 N.W.2d 139.
[35] RCW 26.04.020.
[36] Clerk's Papers at 185.